Filed 12/15/25  In re T.G. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. A.G., Defendant and Appellant. | G065774 (Super. Ct. Nos. 20DP0891A, 20DP0891B) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, June Jee An, Judge. Affirmed.

Ricardo A. Nicol for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsels, for Plaintiff and Respondent.

No appearance for the Minors.

A.G. (father) appeals from juvenile court dispositional orders denying him visitation with his six-year-old daughter, T.G., and awarding M.G. (mother) sole legal and physical custody of T.G. Father contends the record was insufficient to show the order was in T.G.'s best interests. We conclude this contention lacks merit and affirm the orders.

FACTS[1]

T.G. came to the Orange County Social Service Agency's (SSA) attention after receiving reports mother was physically abusing her and her two half siblings.[2] SSA filed an initial jurisdictional petition on behalf of T.G., alleging she was at risk of harm because she had been physically abused by mother, had been removed previously in part because of concerns of physical abuse by both parents, mother and father had a history of domestic violence, and father had a statutory rape conviction involving another minor. After both parents submitted to an amended jurisdictional petition, the juvenile court sustained the petition and continued the case for dispositional consideration. T.G. was placed in father's care.

Six months later, the Santa Ana Police Department placed T.G. in protective custody due to substantiated allegations of sexual abuse by father. T.G. claimed father hit her because she did not like him touching her and showed the social worker a leg injury. T.G. said she was afraid to talk about what happened because she feared father. She said father would hurt her if she told anyone. T.G. went on to state father hits her "very hard" and had caused other injuries. Father pulled her hair and hit her with a belt and

_____

[1] Our factual summary is limited to those facts relevant to the single issue presented in this appeal.

[2] None of T.G.'s half siblings are subject to this appeal.

2

his hands. T.G. did not feel safe with father because he hurt her and touched her private parts when she was in the shower. She also reported father rubbed her private parts and pretended like he was cleaning her, but T.G knew he was not. He was touching her. T.G. said father told her not to tell anyone, "especially not the social workers." T.G. stated father kissed her on the mouth and slept naked in the bed with her.

Based on T.G.'s report, SSA filed a Welfare and Institutions Code section 342[3] subsequent jurisdictional petition on behalf of T.G. One day after SSA filed the subsequent petition, the juvenile court removed T.G. from father's custody and placed her with mother.

The following month, T.G. was interviewed by a social worker with the Child Abuse Services Team. At that time, T.G. said she missed her father and denied any physical or sexual abuse. T.G. explained mother had told her to lie about father touching and hitting her. Around the same time as this interview, T.G. began attending sexual focus counseling with a psychologist. During these sessions, she would use baby talk, digress, and have difficulty answering questions relating to physical or sexual abuse. T.G. would answer questions about mother with significant details but would "shut down" when asked questions about father. The psychologist opined T.G. appeared to have been groomed by father. In support of this theory, the psychologist noted T.G. was hostile towards mother and could not provide specific details or explain any issues in father's home. Additionally, the psychologist opined T.G. would not "go against" father because she currently

___

[3] All further statutory references are to the Welfare and Institutions Code.

had visits with him and he would have access to her again. Because "nobody believed" T.G. when she initially reported father's abuse, the psychologist believed T.G. would report positive interactions with father.

During a later sexual focus counseling session, T.G. would lower her head and not answer questions about father. However, T.G. could provide details in sequence when addressing other issues. T.G. reported father told her she did not love him anymore because she did not cry during their visits. Father also bought toys and offered T.G. gifts rather than spending quality time with her. The psychologist opined these behaviors by father were signs of grooming. During this session, T.G. again stated she was scared to share information about father.

The psychologist continued to provide sexual focus counseling sessions to T.G. The psychologist observed T.G. engaged in her therapy sessions, was building rapport, and was "beginning to open up" during periods when T.G. was not visiting father. When T.G. resumed visits with father, however, T.G. was confused about her prior statements concerning father. T.G. would digress, act like an animal, change the tone of her voice, and change the topic when the psychologist would talk and ask about father.

One month later, SSA requested the juvenile court terminate father's visitation with T.G. because of several issues with father's behavior during visits. During one incident, father whispered in T.G.'s ear that she did not miss or love him. During another visit, T.G. engaged minimally with father as he repeatedly stated he loved and missed her. T.G. did not engage until father began telling her about gifts he bought her. He told T.G. he had bought her a new backpack, clothing, teddy bears, dolls, and a laptop, and he had her money and put more money in her savings weekly. Father also

4

repeatedly tried to find where T.G. lived after SSA refused to tell him. He contacted the Orange County District Attorney (DA) to report that T.G. had been abducted and requested assistance in locating her. He also contacted her therapist to ask for T.G.'s address. Mother relocated because father repeatedly tried to find where she and T.G. lived. Mother was afraid of father because he had threatened her multiple times. Mother's move was also motivated by her fear father would retaliate against her for T.G.'s reports of abuse. The court denied SSA's request to terminate visits with father but temporarily paused them.

The following month, a social worker reported T.G. did not want to resume visits with father in person or through video phone calls. When the social worker asked why, T.G. said she "feels scared." She also reported father made her "feel like nothing" and told her "secrets." During their last visit, father had whispered in T.G.'s ear, "You do not cry today, you do not love me, you do not miss me?" This statement made T.G. feel sad and made her want to cry.

The juvenile court held a dispositional hearing the following month and combined the hearing with adjudication of the section 342 petition. After hearing argument from counsel, the court sustained all the allegations in the section 342 petition and declared T.G. a dependent of the court. The court removed T.G. from father's custody and determined it was not in T.G.'s best interest to resume visitation with him. The court determined there was clear and convincing evidence T.G. should not be returned to father's care and custody because, if she were, she would be "at substantial risk of future harm and abuse." The court based this finding on the allegations made by T.G. and her half siblings. Specifically, the court

looked at the statements T.G. made to a social worker and a therapist that father "touched her inappropriately while she was using the restroom and/or while she was being bathed." The court also considered T.G.'s report that she was "fearful to visit with" father. Finally, on June 12, 2025, the court determined it was not in T.G.'s best interest to offer services to father.

DISCUSSION

Father contends the juvenile court's order terminating all visitation with T.G. and removing her from his custody was neither in T.G.'s best interest nor supported by substantial evidence. Father also argues the order violated his constitutional rights. We disagree.

As an initial matter, we recognize father forfeited all his arguments on appeal. It is a "fundamental rule of appellate review" that the order or judgment appealed from is presumed correct, and all intendments and presumptions are indulged in favor of its correctness. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).) The burden to affirmatively demonstrate error is on the appellant. (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) In father's opening brief, father fails to make a coherent argument, fails to cite the record even once, and fails to cite any applicable law. "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach*, at p. 852.) "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong." (*Ibid.*)

Even if we were to excuse this forfeiture and address father's arguments, they fail on the merits.

6

I.

CUSTODY

A. *Applicable Law*

"In any case in which a minor has been found to be a person described by [s]ection 300 and [SSA] alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described under [s]ection 300, [SSA] shall file a subsequent petition." (§ 342, subd. (a).) "Unless otherwise provided by law, all procedures and hearings required for an original petition are applicable to a subsequent petition under this section." (§ 342, subd. (b).) Those procedures include detention and jurisdiction and disposition hearings pursuant to section 300. (*In re B.P.* (2020) 49 Cal.App.5th 886, 890.)

Before a child may be ordered physically removed from parental custody, the juvenile court must find by clear and convincing evidence that: (1) a substantial danger exists to "the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home [to the parent]," and (2) there are no reasonable means to protect the minor's health without removing the minor from the parent's physical custody. (§ 361, subd. (c)(1).) The former inquiry is made as to the child's physical and emotional health and well-being. (See *In re H.E.* (2008) 169 Cal.App.4th 710, 720 (*H.E.*) ["case law has long construed section 361 as allowing removal where 'return of the child would create a substantial risk of detriment to the child's physical *or* emotional well-being'"].) In determining whether a child may be safely maintained in a parent's physical custody, the juvenile court may consider the parent's past conduct, his or her response to the conditions that gave rise to court intervention, current circumstances,

7

and any reasonable protective measures and services that can be implemented to prevent the child's removal from parental custody. (*In re D.B.* (2018) 26 Cal.App.5th 320, 332 (*D.B.*).)

At the trial court level, the burden of proof for removal is clear and convincing evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) We review removal orders for substantial evidence. (*D.B., supra,* 26 Cal.App.5th at p. 328; *see In re V.L.* (2020) 54 Cal.App.5th 147, 155 [for substantial evidence review of a disposition order, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true"].) In construing the record, ""we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; . . . issues of fact and credibility are the province of the trial court."" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

B. *Analysis*

Father does not present any evidence in support of his conclusory assertion that removing T.G. from his custody was not in her best interest, and the record belies this argument. There was substantial evidence father sexually abused T.G. and had previously been convicted of sexually abusing her half sibling. Although T.G. later recanted her report of abuse, the record amply supports the psychologist's opinion that T.G. changed her mind because father had coached and groomed her. (*In re E.G.* (2025) 112 Cal.App.5th 707, 722 ["there is abundant evidence in the record from which the juvenile court very reasonably determined it was [child's] recantation, not her original account, that lacked credibility" and we defer to the court's "determination of the credibility of both the evidence and the witnesses"].)

8

The record also shows father failed to address why T.G. was removed from his care, repeatedly stated he did not know why she had been removed from his care, and refused to enroll in sexual abuse counseling. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Additionally, father physically abused T.G. and left marks and bruises on her. T.G. was afraid of him and afraid to report his abuse. Collectively, these circumstances supported the juvenile court's finding of a risk to T.G.'s health, safety, and well-being if left in father's care. Substantial evidence supports the court's order removing T.G. from father's custody.[4]

## II.

### VISITATION

A. *Applicable Law*

The purpose of the Welfare and Institutions Code is "to provide maximum safety and protection for [dependent] children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a).) Section 362 authorizes a juvenile court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a).) To that end, a court may deny a parent visitation

---

[4] Father points to nothing in the record, and we find nothing, to support his contention that the court should have "consider[ed] less restrictive alternatives" such as joint custody.

9

when it would be detrimental to the child's physical or emotional well-being. (§ 362.1, subd. (a)(1)(B); see also *In re T.M.* (2016) 4 Cal.App.5th 1214, 1219.)

A juvenile court's visitation orders are reviewed for abuse of discretion. (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.) A court abuses its discretion if its decision is "arbitrary, capricious[,] or patently absurd." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.) "We review the juvenile court's finding that visitation would be detrimental under the substantial evidence standard." (*In re F.P.* (2021) 61 Cal.App.5th 966, 973.) We draw all reasonable inferences in support of the court's findings, and we interpret the record in the light most favorable to the court's determinations. (*I.J. supra,* 56 Cal.4th at p. 773.)

B. *Analysis*

There was substantial evidence to support the juvenile court's finding that continued visitation would be detrimental to T.G.'s mental and emotional health. Father used visits to coach and manipulate T.G., often making her cry. Father's grooming behavior during visits made T.G. fearful about sharing information about him and caused her to recant her abuse allegations. Due to the substantial physical and sexual abuse T.G. endured, she had become afraid of him and no longer wanted to see him. "While visitation is a key element of reunification, the court must focus on the best interests of the children 'and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300.' [Citation.] This includes the 'possibility of adverse psychological consequences of an unwanted visit between [parent] and child.'" (*In re Julie M.* (1999) 69 Cal.App.4th 41, 50.) The evidence amply

supported the court's finding that requiring visitation with father against T.G.'s wishes posed a high risk to T.G.'s mental and emotional health.

Father's argument that the juvenile court could have granted him supervised visitation is unsupported by the record because he repeatedly failed to follow the rules of monitored visitation and other boundaries set out by SSA. (See *H.E.*, *supra,* 169 Cal.App.4th at p. 724 ["Mother recites the need to find no other 'reasonable means' of protecting a child . . . but offers little as to what else the court could have done in these circumstances. Her suggestion of a return 'under strict supervision' ignores her inability to control her behavior even during supervised visits"].) SSA repeatedly asked father not to make emotionally harmful comments to T.G. because her mental health was a priority, but father refused to follow instructions. Father also repeatedly ignored SSA's instructions not to look for T.G.'s address. In one instance, father contacted T.G.'s therapist asking for T.G.'s location. On another occasion, father contacted the DA to report T.G. as "missing" in an attempt to locate T.G. Because father repeatedly refused to abide by boundaries and rules set out for him, the court reasonably found supervised visitation would not be a sufficient safeguard. We find no abuse of discretion on this record.

III.

CONSTITUTIONAL RIGHTS

Finally, father argues termination of visitation "infringes upon [his] fundamental liberty interest in maintaining a relationship with [T.G.], protected under the Fourteenth Amendment." Father's argument is conclusory, and he fails to set forth the applicable standards of review or the facts that support his argument. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [reviewing courts are "not required to

11

develop the parties' arguments or search the record for supporting evidence"].) In any event, we find his argument lacks merit.

"Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.) Moreover, a child also has the right to be protected from abuse and neglect and to be placed in a stable, permanent, nurturing environment. (*In re David B.* (1979) 91 Cal.App.3d 184, 192–193, 195.) "The interests of the parent and the child, therefore, must be balanced." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 306.) Here, the record shows SSA and the juvenile court took action to protect T.G. from father's abuse. Moreover, the court properly balanced father's rights to parenthood and T.G.'s right to safety. Father points us to nothing in the record, nor do we find anything, to support his argument that this action violated his constitutional rights.

DISPOSITION

We affirm the challenged custody and visitation orders.


DELANEY, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.